1

2

3

4

5

UNITED STATES DISTRICT COURT

6

WESTERN DISTRICT OF WASHINGTON

7

AT SEATTLE

8

JUDITH BURBRINK,

9

    *Plaintiff,*

No.

10

  vs.

11

PHYLLIS J. CAMPBELL; MICHELLE M.
EBANKS; ENRIQUE HERNANDEZ, JR.;
JEANNE P. JACKSON; ROBERT G.
MILLER; BLAKE W. NORDSTROM; ERIK
B. NORDSTROM; PETER E. NORDSTROM;
PHILIP G. SATRE; BRAD SMITH; FELICIA
D. THORNTON; B. KEVIN TURNER;
ROBERT D. WALTER; ALISON A.
WINTER; HANGAR THREE LLC; JWB
AIRCRAFT LEASING COMPANY, INC.; JD
PLANE, LLC; JW LTD; M&B BEAVER
LLC; SDJ, LLC; TB PLANE, LLC; 247N,
LLC; and JOHN DOES 1 THROUGH 10,

**VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT**

**REDACTED VERSION, PURSUANT
TO LOCAL RULE 5(g)(3)**

12

13

14

15

16

17

18

    *Defendants*

19

NORDSTROM, INC.,

20

    *Nominal Defendant*

21

22

23

24

25

26

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ............................................................................................. 1

II.  PARTIES ........................................................................................................ 4

    A.  The Director Defendants And Governance Committee Defendants ..................... 4

    B.  The Related Party Defendants .................................................................. 6

    C.  The John Doe Defendants ....................................................................... 8

III.  JURISDICTION AND VENUE ...................................................................... 8

IV.  THE DIRECTOR DEFENDANTS' FIDUCIARY DUTIES ........................... 8

V.  SUBSTANTIVE ALLEGATIONS .................................................................. 10

    A.  The Nordstrom Family Controls The Company .................................... 10

    B.  The Nordstrom Family's Past Related Party Transactions With The Company ........................................................................................... 11

    C.  In Order To Serve The Needs Of The Nordstrom Family, Nordstrom Is Required To Operate A Bloated And Costly Flight Department That Vastly Exceeds The Company's Own Aviation Needs ...................... 12

    D.  Nordstrom Has Failed To Recoup The Full Costs Of The Flight Department From The Nordstrom Family And Other Related Parties ............... 16

    E.  Defendants Have Consciously Disregarded Their Duty To Review The Costs To Nordstrom Of The Related Party Transactions, And Have Issued Misleading Proxy Statements To Shareholders Claiming That The Board Considered These Costs ........................................................................ 19

    F.  The Approval Of The Related Party Transactions Was Further Tainted By The Governance Committee's Material Interest In Those Transactions ............ 22

VI.  DERIVATIVE ALLEGATIONS ................................................................... 23

VII.  DEMAND ON THE BOARD IS EXCUSED BECAUSE IT IS FUTILE ..................... 23

    A.  There Is No Majority Of The Board Which Is Disinterested Or Independent ......................................................................................... 24

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

B.    The Board Failed to Act in Good Faith In Approving The Related Party Transactions And Was Not Adequately Informed ..................................................30

C.    The Governance Committee Exceeded Its Authority By Approving Related Party Transactions In Which The Committee's Members Had A Material Interest ..................................................................................................31

D.    Because The Nordstrom Family Are Controlling Shareholders, All The Related Party Transactions With The Nordstrom Family Are Subject to Heightened Review For Entire Fairness ............................................................32

VIII.    CLAIMS FOR RELIEF .................................................................................33

IX.    PRAYER FOR RELIEF ................................................................................39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**TABLE OF CONTENTS** - Page ii

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

I.    **INTRODUCTION**

1.    Plaintiff Judith Burbrink, by her undersigned attorneys, brings this action to assert claims derivatively on behalf of Nominal Defendant Nordstrom, Inc. ("Nordstrom" or the "Company") and Nordstrom's shareholders.  Plaintiff bases her allegations on knowledge as to herself and her own acts, and upon information and belief as to all other matters based on the investigation of her attorneys, which included but was not limited to a review of documents produced by Nordstrom in response to Plaintiff's demand to inspect the Company's records under RCW 23B.16.020 (the "Production"), U.S. Securities and Exchange Commission ("SEC") filings, news reports, press releases and other publicly available information regarding the Company.

2.    For many years, unbeknownst to its shareholders, Nordstrom has maintained and operated a vast and costly aviation department (the "Flight Department"), the activities of which are far removed from Nordstrom's core business as a fashion retailer.  Since approximately 2007, at the onset of the global financial crisis, Nordstrom's Flight Department has assumed virtually full responsibility for housing, flying, servicing, and repairing not only the Company's planes, but also the large fleet of *personal planes* owned by the *members of the extended Nordstrom family*.    The timing of the Nordstrom family's decision to offload these responsibilities on to the Company as the global financial crisis unfolded is not entirely coincidental.  During the crisis, the Company's stock price plummeted from approximately $55 to as low as $6.61, inflicting steep losses on the Nordstrom family, who were and still are the controlling shareholders in the Company.

3.    As a result, the Company now provides extensive services to the Nordstrom family, at a cost to Nordstrom's shareholders of millions of dollars.  Although the Company itself owns only two planes, the Flight Department employs ▮▮ different pilots to fly both the Company planes and the Nordstrom family planes. These pilots spend a large proportion of

**COMPLAINT**- Page 1

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

their employed time flying the members of the Nordstrom family on their personal planes to numerous vacation destinations around the United States and outside the country.

4.     In addition, the Company employs a large team of maintenance staff to service and repair the Nordstrom family's aircraft.  The Company also employs office and administrative staff to manage the Nordstrom family's personal planes; to schedule flights for the Nordstrom family; and to keep detailed records of, and to account for, who flew on the planes, the duration of the flights, and other important details for purposes of tax reporting and securities filings.

5.     Finally, Nordstrom leases vastly more hangar space than it needs at the King County International Airport, then subleases the excess space to members of the Nordstrom family to house their fleet of personal planes.

6.     Year after year, Nordstrom's board of directors ("Board") has disclosed in the Company's proxy statements filed with the SEC that the Company charges the Nordstrom family market prices for these numerous related party services.  In addition, the Board has repeatedly asserted in the proxy statements that the payments received from the Nordstrom family exceed the estimated costs to the Company of providing these services.

7.     However, a review of the Company's books and records by Plaintiff and her counsel reveals that the Board ***has never conducted any analysis of the costs of providing the services to the Nordstrom family***.  Contrary to their materially false and misleading statements, the Board has, year after year, violated their fiduciary duties by blessing the related party transactions with the Nordstrom family without inquiring what the costs to the Company are, and whether the charges to the Nordstrom family equitably reflect their share of use of the Flight Department's resources.  The Board has also utterly failed to inquire whether the payments from the Nordstrom family adequately compensate the Company for undertaking an aviation-services enterprise that is far removed from the Company's core business and that exposes the Company to risk of liability.  Moreover, at the time that the Board rubber-stamped

---

**COMPLAINT**- Page 2

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

the related party transactions with the Nordstrom family, members of the Board were conflicted because they materially benefited from the related party transactions, and therefore should have been precluded from approving the related party transactions.

8.      As the Company's books and records reveal, had the Board  performed a cost analysis, the Board would have discovered that the Nordstrom family is actually charged only a fraction of the true cost of the services provided to them.  Specifically, Nordstrom's internal records indicate that the Flight Department's pilots and ground maintenance staff spend between ███████████ of their time attending to the needs of the Nordstrom family and their personal planes.  However, the Nordstrom family has consistently paid ██████████ of the costs of the Flight Department.

9.      Furthermore, the true percentage of the Flight Department's costs that is paid by the Nordstrom family is undoubtedly even less, because Plaintiff and her counsel were prevented by Nordstrom from ascertaining all the costs.  In responding to Plaintiff's books and records demand, Nordstrom refused to produce records that would show many additional costs such as the cost of aviation liability insurance to insure the Company against the risks of operating an aviation services-for-hire business, or building depreciation and other fixed costs associated with conducting the operations of its Flight Department.  Nordstrom also refused to provide documents reflecting the many "soft" costs borne by shareholders, such as the costs of professional services to: keep track and account for the numerous transactions with the Nordstrom family; ensure that taxes are correctly paid by the Nordstrom family; and ensure that the nature and amount of the related party transactions are reported every year in the proxy statements.  Once all of these costs are taken into account, the Nordstrom family actually pays just a small fraction of the real costs of the Flight Department.

10.      All of this explains why the Nordstrom family would persist in obtaining aviation-related services from the Company, despite the SEC disclosure obligations triggered by such related party transactions with the Company, and the disclosure of the Nordstrom family's

---

**COMPLAINT**- Page 3

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

private affairs.  If the Nordstrom family did in fact pay the Company "market" rates for all the services provided, the Nordstrom family rationally would have gone elsewhere to obtain these same "market" rate services from other parties.

11.    As set forth in greater detail below, the Nordstrom family, with the connivance of the Nordstrom Board, has contrived to maintain a vast, bloated and costly Flight Department to serve the needs of the Nordstrom family, but subsidized by shareholders. On behalf of Nordstrom and its shareholders, Plaintiff asserts claims for breaches of fiduciary duty, corporate waste, unjust enrichment, and violations of the federal securities laws.

## II.   PARTIES

12.    Plaintiff Judith Burbrink is a United States citizen, residing in King County, Washington.  Ms. Burbrink owns 500 shares of the Class A stock of Nordstrom and has continuously owned Nordstrom Class A common stock since September 5, 1974.

13.    Nominal Defendant Nordstrom is a Washington corporation with its headquarters in Seattle, Washington.  According to its website, Nordstrom is "a leading fashion specialty retailer offering compelling clothing, shoes and accessories for men, women and children."  Nordstrom is listed on the New York Stock Exchange and trades under the ticker "JWN."

### A.    The Director Defendants And Governance Committee Defendants

14.    Defendant Phyllis J. Campbell ("Campbell") has been a director of the Company since 2004.

15.    Defendant Michelle M. Ebanks ("Ebanks") has been a director of the Company since 2011.

16.    Defendant Enrique Hernandez, Jr. ("Hernandez") has been a director of the Company since 1997.  Defendant Hernandez has been a member of the Corporate Governance and Nominating Committee ("Governance Committee") since at least 2004, and was its Chair from approximately 2007 to 2009.

**COMPLAINT**- Page 4

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

17.     Defendant Jeanne P. Jackson ("Jackson") was a director of the Company from 2002 to January 2009.

18.     Defendant Robert G. Miller ("Miller") has been a director of the Company since 2005.

19.     Defendant Blake W. Nordstrom ("Blake Nordstrom") has been a director of the Company since 2005.  Blake Nordstrom is also the President of Nordstrom.  He is the son of Bruce Nordstrom and the brother of Defendants Erik Nordstrom and Peter Nordstrom.  Blake Nordstrom co-owns with Defendant Chris Hughes an entity called 247N, LLC.  247N, LLC is the registered owner of an aircraft, bearing the tail number N247N, which receives services from the Nordstrom Flight Department.  Blake Nordstrom also co-owns with his wife an entity called M&B Beaver, LLC, the registered owner of a plane bearing the tail number N249N, which also receives services from the Flight Department.

20.     Defendant Erik B. Nordstrom ("Erik Nordstrom") has been a director of the Company since 2006.  Erik Nordstrom is an Executive Vice President and the President of Nordstrom Direct.  He is the son of Bruce Nordstrom and the brother of Blake Nordstrom and Peter Nordstrom.

21.     Defendant Peter E. Nordstrom ("Peter Nordstrom") has been a director of the Company since 2006.  Peter Nordstrom is an Executive Vice President and the President of Merchandising.  He is the son of Bruce Nordstrom and the brother of Blake Nordstrom and Erik Nordstrom.

22.     Defendant Philip G. Satre ("Satre") has been a director of the Company since 2006.  Defendant Satre has been a member of the Governance Committee since approximately 2007, and has been its Chair since approximately 2010.

23.     Defendant Brad Smith ("Smith") has been a director of the Company since 2013.

24.     Defendant Felicia D. Thornton ("Thornton") was a director of the Company from 2010 to 2012.

**COMPLAINT**- Page 5

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

25.     Defendant B. Kevin Turner ("Turner") has been a director of the Company since 2010.

26.     Defendant Robert D. Walter ("Walter") has been a director of the Company since 2008.  Defendant Walter has been a member of the Governance Committee since approximately 2011.

27.     Defendant Alison A. Winter ("Winter") has been a director of the Company since 2001.  Defendant Winter has been a member of the Governance Committee since approximately 2006.

28.     Defendants Campbell, Ebanks, Hernandez, Jackson, Miller, Blake Nordstrom, Erik Nordstrom, Peter Nordstrom, Satre, Smith, Thornton, Turner, Walter and Winter are hereinafter collectively referred to as the "Director Defendants."

29.     Defendants Hernandez, Satre, Walter and Winter are also hereinafter collectively referred to as the "Governance Committee Defendants."

**B.     The Related Party Defendants**

30.     Defendant Hangar Three LLC ("Hangar Three") is a company owned by Blake Nordstrom, James F. Nordstrom, Jr. and John N. Nordstrom.  On June 6, 2006, Hangar Three entered into a sublease with the Company for a portion of a parcel of land leased by the Company from King County, Washington, at the King County International Airport.

31.     Defendant JBW Aircraft Leasing Company, Inc. ("JBW") is the registered owner of two planes, bearing the tail numbers N225N and N229N.  Both these two planes receive extensive aviation-related services from the Company.  According to the Company's proxy statements, during the fiscal year beginning February 3, 2013, the owners of JBW were John N. Nordstrom, Bruce A. Nordstrom and D. Wayne Gittinger (since deceased), a former director and spouse of Anne. E. Gittinger, who is the sister of Bruce Nordstrom.

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

32.     Defendant JD Plane, LLC ("JD Plane") is co-owned by James F. Nordstrom Jr. and Daniel Nordstrom, and is the registered owner of a plane bearing the tail number N226N, which receives services from the Nordstrom Flight Department.

33.     Defendant JW Ltd ("JWL") is owned by John N. Nordstrom, and is the registered owner of the planes bearing tail numbers N233N and N456N, both of which have received services from the Nordstrom Flight Department.

34.     Defendant M&B Beaver, LLC ("M&B Beaver") is co-owned by Blake Nordstrom and his wife Molly Nordstrom, and is the registered owner of a plane bearing tail number N249N, which receives services from the Nordstrom Flight Department.

35.     Defendant Blake Nordstrom is also sued in his capacity as the recipient of related party services from the Company.  According to the Company's 2008 proxy statement, Blake Nordstrom received services from the Nordstrom Flight Department in the fiscal year ended February 2, 2008.

36.     Defendant SDJ, LLC ("SDJ") is owned by James F. Nordstrom Jr. and is the registered owner of a plane bearing tail number 7273Z, which has received services from the Nordstrom Flight Department.

37.     Defendant TB Plane, LLC ("TB Plane") is owned by Sally A. Nordstrom and is the registered owner of a plane bearing tail number N227N, which has received services from the Nordstrom Flight Department.

38.     Defendant 247N, LLC ("247N") is co-owned by Chris Hughes and Blake Nordstrom and is the registered owner of a plane bearing tail number N247N, which has received services from the Nordstrom Flight Department.

39.     Defendants Hangar Three, JBW, JD Plane, JWL, M&B Beaver, Blake Nordstrom, SDJ, TB Plane and 247N are hereinafter collectively referred to as the "Related Party Defendants."

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

C.      **The John Doe Defendants**

40.     Defendants John Doe 1 through 10 are additional parties who, upon information and belief, received services provided by Nordstrom's Flight Department.

41.     Defendants John Doe 1 through 10 are hereinafter collectively referred to as the "John Doe Defendants."

## III.   <u>JURISDICTION AND VENUE</u>

42.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa, because the claims in this action arise under, among other laws, Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

43.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1391(b), (c) and (d).  Many of the acts and transactions that constitute violations of law complained of herein, including the preparation and dissemination to the public of materially false and misleading information, occurred in this District.

## IV.   <u>THE DIRECTOR DEFENDANTS' FIDUCIARY DUTIES</u>

44.     As directors and officers of Nordstrom, a Washington corporation, the Director Defendants owe Nordstrom and its shareholders the highest fiduciary duties of loyalty, good faith and care in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.

45.     Under the duty of loyalty, directors are required, when conducting the affairs of the corporation, to act solely in furtherance of the best interests of the corporation and its shareholders and to act in good faith.  Directors are prohibited from engaging in self-dealing. When directors consciously disregard their responsibilities or engage in willful misconduct or recklessness, the directors breach their duty of loyalty to the Company.

---

**COMPLAINT**- Page 8

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

46.     The duties owed by Nordstrom's directors and officers are also set forth in the Company's Employee Code of Business Conduct and Ethics (the "Employee Code of Conduct") and Director Code of Business Conduct and Ethics (the "Director Code of Conduct"), both of which are dated November 19, 2014.

47.     The Employee Code of Conduct, which applies to Nordstrom's officers, requires every employee to "ensure that you do not use Nordstrom's property, funds, personnel, time, facilities or equipment for your own personal use or gain." The Employee Code of Conduct states that Nordstrom "values fair and honest dealings with our customers, coworkers, competitors and other business partners [and] expect[s] employees to uphold these values by avoiding conflicts of interest." The Employee Code of Conduct also states that employees are "expecte[ed] to use good judgment …. When we talk about good judgment, it's really about how we treat our customers, how we treat each other and how we do business."

48.     The Director Code of Conduct provides that "Directors shall perform their duties in a manner that protects Nordstrom's assets and ensures that Nordstrom's assets are used only for legitimate business purposes. Directors shall not use Nordstrom's assets for their personal benefit or gain." Further, "Directors must observe the highest ethical standards and act with fairness, integrity and honesty to promote an environment that encourages Nordstrom's officers and employees to sustain and enhance Nordstrom's reputation and treat each other, as well as customers, suppliers, and competitors, with fairness and respect."

49.     Nordstrom's directors who serve as members of committees of the Board have additional responsibilities and duties. According to its Charter, the purpose of the Governance Committee is "to take a leadership role in shaping the Company's corporate governance and to recommend individuals to the Board for nomination as members of the Board and its committees." Among its principal duties and responsibilities, the Governance Committee has an obligation to "[r]eview possible conflicts of interest between the Company and any *related person* within the meaning of Item 404 of Securities and Exchange Commission Regulation S-K,

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

and review and approve any transaction between the Company and any such related person that would be required to be disclosed in the Company's annual proxy statement." (emphasis in original).

50.    The Company's proxy statement, filed March 27, 2014 (the "2014 Proxy") further explains the Governance Committee's responsibilities.  When reviewing a transaction, the Governance Committee examines "*all relevant factors* including the Company's rationale for entering into a related party transaction, alternatives to the transaction, whether the transaction is on terms at least as fair to the Company as would be the case if the transaction were entered with a third party, and the potential of an actual or apparent conflict of interest." (emphasis added).  Furthermore, starting in 2009, the Governance Committee could approve a related party transaction only if it determined "*that the transaction [would] result in a net benefit to the Company and our shareholders*." (emphasis added).   Since 2013, the Governance Committee is permitted to approve a transaction "if the [Governance] Committee determines that the transaction is reasonable and fair to the Company."

51.    Additionally, between 2007 to 2012, according to the Company's proxy statements, "[n]o member of the [Governance] Committee participates in any approval of a Related Party transaction in which the member has a material interest, other than to provide all pertinent information regarding the transaction to the Committee."

52.    As set forth below, based on the above obligations, the Director Defendants and the Governance Committee Defendants breached their fiduciary duties to Nordstrom and its shareholders.

V.    **SUBSTANTIVE ALLEGATIONS**

A.    **The Nordstrom Family Controls The Company**

53.    Nordstrom was founded in 1901 as a shoe retailer.  In 1971, Nordstrom went public and is now listed on the New York Stock Exchange, trading under the ticker "JWN."

**COMPLAINT**- Page 10

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

54.     Despite being a public company, Nordstrom is still controlled at many levels by the Nordstrom family.  According to the Company's most recent proxy statement, members of the Nordstrom family own at least 27% of the Company.  Bruce A. Nordstrom beneficially owns 13.84% of the Company; his sister Anne. E. Gittinger owns 8.16%; and his sons Blake Nordstrom, Erik Nordstrom and Peter Nordstrom collectively own another 4.82% of the Company.

55.     The members of the extended Nordstrom family also dominate Nordstrom's Board, with the brothers Blake, Erik and Peter Nordstrom occupying three seats.  Moreover, the Nordstrom family continues to run the Company.  In addition to their roles as directors, Blake Nordstrom is the President of Nordstrom.  Peter Nordstrom is an Executive Vice President and the President of Merchandising.  Erik Nordstrom is an Executive Vice President and the President of Nordstrom Direct.  James F. Nordstrom, Jr., the second cousin of Blake, Erik and Peter Nordstrom, is an Executive Vice President and the President of Stores.

**B.      The Nordstrom Family's Past Related Party Transactions With The Company**

56.     Since approximately 1998, Nordstrom and members of the Nordstrom family have engaged in related party transactions involving corporate aircraft.  According to its proxy statement, during the fiscal year ended January 31, 1998, Nordstrom leased an aircraft from JBW.  At the same time, JBW made payments to Nordstrom in the amount of $58,200 for "services rendered."  The proxy statement did not specify what these services were.

57.     For the next nine years, the amount of services provided by Company to the Nordstrom family steadily increased.  Then, in 2007, the volume of corporate aircraft related party transactions between the Company and the Nordstrom family increased dramatically, as a direct result of the financial crisis.

58.     In March 2007, Nordstrom's stock price peaked at around $55 per share. Between March 2007 and November 2008, as the global financial crisis unfolded, Nordstrom's

**COMPLAINT**- Page 11

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

stock price plummeted to as low as $6.61, inflicting steep losses on the Nordstrom family.  Not coincidentally, it was around this time that the Nordstrom family began to shift the costs of flying and maintaining their vast fleet of personal planes on to the Company.

59.     On April 10, 2008, Nordstrom filed its proxy statement for the fiscal year commencing February 4, 2007 and ending February 2, 2008 (the "2008 Proxy").  The 2008 Proxy revealed a large expansion in the amount of aviation-related services provided by the Company to the Nordstrom family in just 12 months.  The Company disclosed that four Nordstrom family related parties, including JBW and Blake Nordstrom, now paid the Company a total of $378,520 for "maintenance services, pilot services, management fees and hangar rent related to the operation and maintenance of those parties' personal aircraft."  In addition, the Company disclosed that the same four related parties now paid Nordstrom $786,046 for the "costs of fuel, parts and other miscellaneous expenses related to the operation and maintenance of those parties' personal aircraft."

60.     Almost overnight, Nordstrom, a fashion retailer, officially entered into the business of providing aviation-related services to the members of the Nordstrom family.

**C.     In Order To Serve The Needs Of The Nordstrom Family, Nordstrom Is Required To Operate A Bloated And Costly Flight Department That Vastly Exceeds The Company's Own Aviation Needs**

61.     As a result of the decision in 2007 to assume virtually full responsibility for the aviation needs of the Nordstrom Family, Nordstrom now operates a vast and costly Flight Department that far exceeds the Company's own aviation requirements.

62.     To provide some background, Nordstrom owns and operates two aircraft, with the tail numbers N224N and N228N.  N224N is a 2006 Bombardier Inc. CL-600-2B16 (Challenger 600-series), with a 22-seat capacity.  N228N is a 2005 Bombardier Inc. BD-100-1A10 (Challenger 300-series), with an 8-seat capacity.  These two planes are referred to hereinafter as the "Company Aircraft."

**COMPLAINT**- Page 12

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

63.     Nordstrom also leases the two planes owned by JBW, bearing the tail numbers N225N and N229N, under a "dry lease" with JBW.  Under the dry lease, Nordstrom uses the planes when they are not being used by their owners (members of the Nordstrom family). During Fiscal Years 2011, 2012 and 2013 (the fiscal years beginning January 30, 2011, January 29, 2012 and February 3, 2013), the Company used the two JBW planes for 56, 71 and 76 hours, respectively.

64.     In total, for Fiscal Years 2011, 2012 and 2013, the number of hours flown for Nordstrom's corporate purposes on the Company Aircraft and the two JBW planes were ███ ████████████████████████████████

65.     A company which owns and operates two aircraft and which flies an average of ████████ annually would typically employ 3-4 pilots at most.  However, that is not the case at Nordstrom.  Even though Nordstrom owns just the two planes N224N and N228N, Nordstrom employs ████ pilots, an astonishing number for a fashion retail company.  In addition, Nordstrom maintains a large number of ground crew and maintenance staff that exceeds the needs of a company that owns just two planes.

66.     The reason why Nordstrom maintains such a large staff is that Nordstrom has agreed to provide management, maintenance, pilot and other services for *eight* additional planes owned by members of the extended Nordstrom family (collectively, the "Nordstrom Family Aircraft"), specifically:

- N225N and N229N.  These are the two JBW planes.  N225N is a Bombardier Inc. CL-600-2B16 (Challenger 600-series) with 22-seat capacity, identical to the Company's N224N.  N229N is a 2007 Cessna 560 with 11-seat capacity. When the planes are not in use under the dry lease with the Company, the Nordstrom family flies on these two planes, and uses the Flight Department's employees to maintain, fly and operate these planes.  According to flight records, the Nordstrom family and their friends flew for a total of ████

**COMPLAINT**- Page 13

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

 on these two planes during Fiscal Years 2011 to 2013, respectively;

- N226N, a 2008 Pilatus PC-12, 11-seat plane registered to Defendant JD Plane, which is owned by James F. Nordstrom Jr. and Daniel Nordstrom;

- N227N, a Dehavilland DHC2 MK III, 11-seat float plane registered to Defendant TB Plane, which is owned by Sally A. Nordstrom;

- ███████████████████████████████████████████████████████████████████████████████████████;

- N247N, a 2001 Pilatus PC-12/45, 12-seat plane registered to Defendant 247N, LLC, which is owned by Blake Nordstrom and Chris Hughes; and

- N249N, a Dehavilland Beaver DHC-2 MK III, 8-seat float plane registered to Defendant M&B Beaver, which is owned by Blake Nordstrom and his wife.

67.     These are just the Nordstrom Family Aircraft that Nordstrom currently services. In the past, Nordstrom has provided services for other aircraft owned by Nordstrom family members.  Also, these are only the planes disclosed in the Company's proxy statements.  Upon information and belief, Nordstrom's Flight Department maintains and flies additional planes for other related parties that Nordstrom has not disclosed because the amounts of the transactions fall below the $120,000 threshold under Item 404(a) of SEC Regulation S-K.

68.     In order to serve these seven additional aircraft (and possibly more), Nordstrom's Flight Department devotes a significant proportion of its resources to attending to the needs of the Nordstrom family.  During Fiscal Years 2011 to 2013, Nordstrom's twelve pilots devoted an average total of ███ of their flying hours to flying the Nordstrom Family Aircraft, with the percentage reaching as high as ███ in Fiscal Year 2011.  Similarly, maintenance invoices issued by the Company to the Nordstrom family show that, since the start of Fiscal Year 2011, Nordstrom employees have spent thousands of hours providing maintenance services for the

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

Nordstrom Family Aircraft, accounting for approximately ▮▮▮ of their employed time.  This is summarized in the table below:

| PILOT HOURS | | | | |
|---|---|---|---|---|
| **Fiscal Year** | **2011** | **2012** | **2013** | **Total** |
| Company | ▮ | ▮ | ▮ | ▮ |
| Nordstrom Family | | | | |
| *Nordstrom Family % of Total* | | | | |
| **Total Pilot Hours** | | | | |

| MAINTENANCE HOURS | | | | |
|---|---|---|---|---|
| **Fiscal Year** | **2011** | **2012** | **2013** | **Total** |
| Company Maintenance* | ▮ | ▮ | ▮ | ▮ |
| Nordstrom Family Maintenance | | | | |
| *Nordstrom Family % of Total* | | | | |
| **Total Maintenance Hours** | | | | |

*The Company did not provide the number of maintenance hours spent on the two Company Aircraft N224N and N228N.  However, N224N is identical to the JBW plane N225N, and both started operation at the same time.  Also, Company Aircraft N228N is of approximately the same year of manufacture and seat capacity as N229N.  Accordingly, the number of maintenance hours for N224N and N228N were estimated based on the hours spent maintaining N225N and N229N.

69.     The above percentages in fact under-account for the actual number of Nordstrom-employee hours devoted to serving the needs of the Nordstrom family.  That is because Nordstrom distorts its invoice calculations to favor the Nordstrom family members.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**COMPLAINT**- Page 15

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

1

2

3

4

70.     Apart from the amount of time expended by the Flight Department on serving the needs of the Nordstrom Family, Nordstrom also supplies the Nordstrom family with the land from which to operate the Nordstrom Family Aircraft.  Nordstrom leases a parcel of land from King County, Washington at the King County International Airport and operates its Flight Department from that location.  However, as with the size of the Flight Department, the amount of land leased by Nordstrom far exceeds the needs of the Company itself.

71.     In the 2014 Proxy, Nordstrom admits that "[t]he size of the Company's flight department is such that the Company does not require access to or use of the entire parcel." Instead, Nordstrom subleases a portion of the property to Defendant Hangar Three, which is owned by Blake Nordstrom, James F. Nordstrom, Jr. and John N. Nordstrom.  Hangar Three has even constructed a hangar to store its owners' personal aircraft on the subleased property.

72.     In this manner, and under the Board's watch, the Nordstrom family has deliberately blurred the lines between the Company and the Nordstrom family, allowing the family to convert the Company's Flight Department into their own personal, on-call concierge service.

### D.     Nordstrom Has Failed To Recoup The Full Costs Of The Flight Department From The Nordstrom Family And Other Related Parties

73.     The arrangements by which the Company provides the above aviation-related services to the Nordstrom family are extremely favorable to the family.  As Plaintiff and her counsel have uncovered from their investigation, even though the Flight Department expends a large proportion of its employee hours serving the needs of the Nordstrom family, the Nordstrom family pays just a fraction of the costs of the Flight Department.

**COMPLAINT**- Page 16

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

74.     According to expense summaries included in Nordstrom's Production, the costs of the Flight Department in Fiscal Years 2011 to 2013, and the amounts of reimbursement obtained from the Nordstrom family, were as follows:

| Flight Department Costs | Fiscal 2011 (beginning 1/30/2011) | Fiscal 2012 (beginning 1/29/2012) | Fiscal 2013 (beginning 2/3/2013) |
|---|---|---|---|
| Labor | ███ | ███ | ███ |
| Benefits - retirement (7%) | | | |
| Insurance (health, etc.) (5%) | | | |
| FICA (7.65%) | | | |
| Training | | | |
| Professional Services | | | |
| Supplies | | | |
| Travel | | | |
| Other | | | |
| **Total Costs** | ██ | ██ | ██ |
| *Related Party Reimbursement - (Labor)* | ██ | ██ | ██ |
| *Related Party Reimbursement - (Airport Lease & Misc)* | ██ | ██ | ██ |
| ***Total Related Party Reimbursement*** | ██ | ██ | ██ |
| **Reimbursement (% of Total Flight Department Costs)** | █ | █ | █ |

75.     As can be seen from the table above, the Nordstrom family pays the Company on average ███████ of the costs of operating the Flight Department, although they use approximately ███ of the Flight Department's pilot time, and approximately ███ of maintenance staff time. █████████████████████████████████████████ █████████████████████████████████████████████ ███████████████████████████.

76.     In fact, the true percentage of the Flight Department's costs paid by the Nordstrom family is even less than the figures shown above, because Nordstrom refused to provide many other additional costs associated with operating the Flight Department.

---

**COMPLAINT**- Page 17

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

77.     The expense summaries provided by Nordstrom do not include many "soft" costs in the form of ancillary expenses that are directly necessitated by Nordstrom's decision to service, operate and maintain the Nordstrom Family Aircraft.  For example, as evident from Nordstrom's Production to Plaintiff, staff from other Nordstrom departments, including the Corporate Accounting and Tax Departments, spend numerous hours maintaining detailed books and records to track all the transactions with the Nordstrom family so that the Company can issue invoices to the Nordstrom family and remit the correct amount of sales tax to the tax authorities.  In addition, Nordstrom has to expend significant sums annually in the form of legal and other professional fees in order to track the numerous related party transactions and to prepare proxy statements that disclose and discuss these transactions.  These expenses are all taken at the corporate level, and are not allocated to the Flight Department.  As a result, Nordstrom has never passed these extensive ancillary expenses on to the Nordstrom family.

78.     Also, the expense summaries do not include the other hidden costs of operating an aviation services-for-hire business.  For example, a company like Nordstrom which hires out its pilots to fly aircraft owned by other persons, and which provides maintenance and other services for aircraft owned by other persons, incurs considerable risk of liability from running such an operation.  The company would have to obtain, at the very least, comprehensive aviation liability insurance and passenger liability insurance to insure against losses from damage to property or persons caused by the company's aviation operations.  Nordstrom, however, declined to disclose the costs of this insurance.

79.     Furthermore, in the expense summaries, Nordstrom declined to provide obvious overhead costs such as building depreciation and other fixed costs associated with conducting the operations of its Flight Department at the King County International Airport.

80.     ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

81. ████████████████████████████████

82.    In short, by agreeing to manage, fly and service the Nordstrom family's personal aircraft fleet, Nordstrom has secretly diverted millions of dollars in hidden subsidies to the Nordstrom family.

**E.    Defendants Have Consciously Disregarded Their Duty To Review The Costs To Nordstrom Of The Related Party Transactions, And Have Issued Misleading Proxy Statements To Shareholders Claiming That The Board Considered These Costs**

83.    In explaining the decision in 2007 to assume responsibility for virtually all of the Nordstrom family's aviation needs, Nordstrom stated in the 2008 Proxy: "***In each case, these payments exceeded the estimated cost to the Company of providing those services*** and were based on an estimate of their fair value after conducting a survey of similar services and rates available from independent third parties. These rates were last updated in January 2006 based

---

**COMPLAINT**- Page 19

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

upon an updated survey of rates for maintenance services, pilot services, management fees and hangar rent available from independent third parties." (emphasis added).  In every fiscal year since 2008, Nordstrom has defended its related party transactions with the Nordstrom family by repeating substantially the same statements.

84.     Contrary to the Company's proxy statements, however, Nordstrom has **never performed any cost analysis**, and therefore never had any basis to conclude that the payments from the Nordstrom family exceeded the "estimated costs" to the Company.  The minutes of the meetings of the Governance Committee tasked with reviewing the related party transactions clearly show that the Governance Committee never performed a cost analysis.



85.

As such, year after year, the Governance Committee simply rubber-stamped the related party transactions with the Nordstrom family.

COMPLAINT- Page 20

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

86.    By representing to shareholders in the proxy statements that the "payments [received from the Nordstrom family] exceeded the estimated cost to the Company of providing those services," the Board and the Governance Committee came under a **duty** to estimate those costs.  Separately, the Governance Committee came under a duty to review the costs because, between 2009 and 2013, the Governance Committee was authorized to approve a related party transaction only if the committee determined "that the transaction [would] result in a **net benefit** to the Company and our shareholders."  (emphasis added).  In order to assess whether there was a "net benefit," the Governance Committee was required at the very least to perform a cost analysis.

87.    As part of their cost analysis, the Board and the Governance Committee should have asked what proportion of the Flight Department's resources were being diverted to serving the needs of the Nordstrom family, and whether the Nordstrom family was paying its equitable share of the costs.  The Board and Governance Committee also should have informed themselves what risks were being assumed by Nordstrom in providing aviation services for hire, and whether those risks were appropriate for a Company in the fashion retail business and were being adequately compensated by the payments from the Nordstrom family.

88.    Instead, the Board and its Governance Committee willfully closed their eyes and consciously disregarded their duty to inquire into the Flight Department's costs.  This is underscored by Nordstrom's proxy statements.  For the fiscal year ended January 31, 2009, Nordstrom issued a proxy statement stating that, "in the Board's opinion, the charges [to the Nordstrom family] were fair and beneficial to the Company because the payments allowed the Company to subsidize the cost of operating the Company's flight department."  The Board and the Governance Committee must have realized thereafter that they had never performed a cost analysis and, therefore, that there was no factual basis for this assertion because, since that proxy statement, no Nordstrom proxy statement has made that assertion.  As described above, the subsidy goes entirely the other way, in favor of the Nordstrom family.

**COMPLAINT**- Page 21

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

89.     As such, the Board and the Governance Committee consciously disregarded their fiduciary duties.  In addition, the Board and the Governance Committee breached their fiduciary duties by misleading investors that they did in fact perform a cost analysis.

**F.      The Approval Of The Related Party Transactions Was Further Tainted By The Governance Committee's Material Interest In Those Transactions**

90.     Between 2007 to 2012, the Company's proxy statements disclosed to shareholders that "[n]o member of the [Governance] Committee participates in any approval of a Related Party transaction in which the member has a material interest, other than to provide all pertinent information regarding the transaction to the Committee."

91.     However, this was not true.  Based on the Company's Production, Plaintiff and her counsel have uncovered that the Governance Committee approved, year after year, the related party transactions with Defendant JBW even though, in each year, a majority of the members of the Governance Committee materially benefited from  the transactions with JBW.

92.     ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

93.     ██████████████████████████████████████████████████████████████████████████████████████████████████████████

94.     Because they personally benefited materially from the transactions with JBW, which account for the largest proportion of the Company's related party transactions with the Nordstrom family, the above Board members should have recused themselves from any decisions involving JBW.  Instead, they continued to rubber-stamp the related party transactions with JBW and the other Nordstrom family related parties.

---

**COMPLAINT**- Page 22

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

## VI.    DERIVATIVE ALLEGATIONS

95.    Plaintiff brings this action derivatively to redress injuries suffered by the Company as a direct result of the breaches of fiduciary duty and other breaches by the Defendants.

96.    Plaintiff has owned Nordstrom stock continuously during the time of the wrongful course of conduct by the Defendants alleged herein and continues to hold Nordstrom stock.

97.    Plaintiff will adequately and fairly represent the interests of Nordstrom and its stockholders in enforcing and prosecuting the Company's rights.

## VII.    DEMAND ON THE BOARD IS EXCUSED BECAUSE IT IS FUTILE

98.    Plaintiff has not made a demand on the Nordstrom Board to bring suit asserting the claims set forth herein because pre-suit demand is excused as a matter of law under RCW 23B.07.400.

99.    *First*, a majority of the Board is either interested in the transactions that are challenged, or suffer from conflicts of interest and divided loyalties.  The Board is therefore incapable of properly considering a lawsuit with respect to the challenged transactions, and demand is excused for this independent reason alone.

100.    *Second*, in approving the related party transactions with the Nordstrom family, the Board failed to adequately inform themselves and consciously disregarded their fiduciary duties, and thereby failed to exercise business judgment.  Accordingly, demand is excused for this independent reason alone.

101.    *Third*, in approving certain of the related party transactions, the Governance Committee acted beyond its power because certain members of the Governance Committee had a material interest in the transactions in question.  Because it acted beyond its power, the conduct of the Governance Committee is not subject to deference as an exercise of business judgment, and demand is excused for that independent reason alone.

**COMPLAINT**- Page 23

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

102.    *Fourth*, because the Nordstrom family are controlling shareholders, the price and terms of the related party transactions, as well as the process by which the transactions were approved, are subject to heightened scrutiny, and the burden shifts to the related parties and the Board to demonstrate that both these aspects of the transactions were entirely fair to Nordstrom's shareholders.  Because the transactions are therefore not subject to deference under the business judgment rule, demand is excused for this independent reason alone.

### A.    There Is No Majority Of The Board Which Is Disinterested Or Independent

103.    The Nordstrom Board currently consists of the following thirteen directors: Defendants Campbell, Ebanks, Hernandez, Miller, Blake Nordstrom, Erik Nordstrom, Peter Nordstrom, Satre, Smith, Turner, Walter and Winter; and Shellye L. Archambeau, who joined the Board in February 2015.

104.    Director Blake Nordstrom, a son of Bruce Nordstrom (the former Chairman of the Company) and the President of the Company, is the co-owner of the entities M&B Beaver and 247N, both of which have received aviation-related services from the Nordstrom Flight Department.  Blake Nordstrom therefore is directly interested in the related party transactions and is unable to consider a demand to commence litigation challenging those transactions.

105.    Director Erik Nordstrom, another son of Bruce Nordstrom and the Executive Vice President and the President of Nordstrom Direct, is conflicted and unable to consider a demand because many of his family members including his father, his brother Blake Nordstrom and cousins Daniel and James Nordstrom, are co-owners in entities that benefit directly from the aviation services provided by Nordstrom's Flight Department.  In particular, his father Bruce Nordstrom is a co-owner of JBW, and his brother Blake Nordstrom is a co-owner of the entities M&B Beaver and 247N.  All three entities are defendants which have benefited directly from the aviation services provided by Nordstrom's Flight Department.  Erik Nordstrom is also conflicted because of his working relationship with his brothers and cousin James Nordstrom.

---

**COMPLAINT**- Page 24

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

1    Erik Nordstrom has been employed by Nordstrom since 1978, and has been given opportunities

2    and advancements based on his family relationships.

3        106.    Director Peter Nordstrom, another son of Bruce Nordstrom and the Executive

4    Vice President and the President of Merchandising, is conflicted and unable to consider a

5    demand because many of his family members including his father, his brother Blake Nordstrom

6    and cousins Daniel and James Nordstrom, are co-owners in entities that benefit directly from

7    the aviation services provided by Nordstrom's Flight Department.   In particular, his father

8    Bruce Nordstrom is a co-owner of JBW, and his brother Blake Nordstrom is a co-owner of the

9    entities M&B Beaver and 247N.   All three entities are defendants which have benefited directly

10   from the aviation services provided by Nordstrom's Flight Department.   Peter Nordstrom is also

11   conflicted because of his working relationship with his brothers and cousin James Nordstrom.

12   Peter Nordstrom has been employed by Nordstrom since 1979, and has been given opportunities

13   and advancements because of his family relationships.

14       107.    Defendant Hernandez cannot impartially consider a demand because he is not

15   disinterested and is not independent.    Hernandez personally has made extensive use of

16   Nordstrom's corporate aircraft and therefore benefits substantially from the services of the

17   current Flight Department. ███████████████████████████████████

18   ███████████████████████████████████████████████████████████████

19   Hernandez therefore cannot consider a demand which directly challenges the current operations

20   of the Flight Department. ███████████████████████████████

21   ███████████████████████████████████████████████████████████████

22   Because JBW is a defendant and one of the related parties whose transactions with the

23   Company are being challenged, Hernandez cannot impartially consider litigation against JBW,

24   because he has personally benefited from and continues to benefit from the relationship with

25   JBW.

26

COMPLAINT- Page 25

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

108.    In addition, Hernandez has been a member of the Governance Committee since at least 2007.  In that capacity, Hernandez approved the related transactions with the Nordstrom family every year since 2007.  Hernandez approved the transactions even though he benefited from the related party transactions and was therefore conflicted.  In conscious disregard of their duties, Hernandez and the other members of the Governance Committee failed to assess the costs to Nordstrom of effectively assuming all responsibility for maintaining, operating and flying the Nordstrom Family Aircraft.  Even more egregiously, Hernandez and the other members of the Governance Committee falsely represented in every Nordstrom proxy statement since 2007 that they had in fact performed an assessment of the costs.  For these reasons, Hernandez cannot impartially consider any demand because he himself is a defendant and is subject to a substantial likelihood of liability arising from this litigation.

109.    Defendant Satre cannot impartially consider a demand because he is not disinterested and is not independent.  Like Hernandez, Satre has also personally made extensive use of Nordstrom's corporate aircraft and therefore benefits substantially from the services of the current Flight Department. ████████████████████████████████████████ ████████████████████████████████████████████████████████ Satre therefore cannot consider a demand which directly challenges the current operations of the Flight Department. ████████████████████████████████████ ████████████████████████████████████████ Because JBW is a defendant whose related party transactions with the Company are being challenged, Satre cannot impartially consider litigation against JBW, because he has personally benefited from and continues to benefit from the relationship with JBW.

110.    Additionally, Satre has been a member of the Governance Committee since at least 2007, and is currently the Chair of the committee.  In that capacity, Satre approved the related transactions with the Nordstrom family every year since 2007, even though Satre benefited personally from those related party transactions and was therefore conflicted.  Further,

**COMPLAINT**- Page 26

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

Satre consciously disregarded his duties by failing to assess the costs to Nordstrom of effectively assuming all responsibility for maintaining, operating and flying the Nordstrom Family Aircraft, and then further breached his duties by approving proxy statements that misled shareholders that they had in fact assessed those costs.  For these reasons, Satre cannot impartially consider any demand because he himself is a defendant and is subject to a substantial likelihood of liability arising from this litigation.

111.    Defendant Winter cannot impartially consider a demand because she is not disinterested and is not independent.  Like Hernandez and Satre, Winter has also personally made extensive use of the Nordstrom corporate aircraft and therefore benefits substantially from the services of the current Flight Department.  ███████████████████████████████████████████████████  Winter therefore cannot consider a demand which directly challenges the current operations of the Flight Department. ███████████████████████████████████████████████████████ Because JBW is a defendant and one of the related parties whose transactions with the Company are being challenged, Winter cannot impartially consider litigation against JBW, because she has personally benefited from and continues to benefit from the relationship with JBW.

112.    Additionally, as a member of the Governance Committee since at least 2007, Winter approved the related transactions with the Nordstrom family every year since 2007, even though Winter benefited personally from those related party transactions and was therefore conflicted.  Further, Winter consciously disregarded her duties by failing to assess the costs to Nordstrom of effectively assuming all responsibility for maintaining, operating and flying the Nordstrom Family Aircraft, and then further breached her duties by approving proxy statements that misled shareholders that they had in fact assessed those costs.  For these reasons, Winter cannot impartially consider any demand because she herself is a defendant and is subject to a substantial likelihood of liability arising from this litigation.

**COMPLAINT**- Page 27

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

113.    Defendant Walter has been a member of the Governance Committee since at least 2011, and like Hernandez, Satre and Winter, Walter consciously disregarded his duties by failing to assess the costs to Nordstrom of effectively assuming all responsibility for maintaining, operating and flying the Nordstrom Family Aircraft, and then further breached his duties by approving proxy statements that misled shareholders that they had in fact assessed those costs.   For these reasons, Walter cannot impartially consider any demand because he himself is a defendant and is subject to a substantial likelihood of liability arising from this litigation.

114.    Defendant Campbell also cannot impartially consider a demand.   Campbell became a director in 2004.   From 2004 to 2009, Campbell was also the head of the Seattle Foundation where one of her primary responsibilities was fundraising.   According to the Seattle Foundation's Annual Reports, numerous Nordstrom family members donated to the foundation in 2008, 2009 and 2010, including Bruce Nordstrom, Blake Nordstrom and James Nordstrom. Campbell is also heavily involved in social and philanthropic organizations in the Seattle area with Bruce Nordstrom and his wife Jeannie Nordstrom, and other Nordstrom family members. For example, in 2001, Campbell was a guest speaker for the Cancer Lifeline's Caregivers, where Jeannie Nordstrom is a board member, and Bruce and Jeannie Nordstrom are major donors.   Campbell is also a donor to the Washington Woman's Foundation where Jeannie Nordstrom is a founding member of the Foundation and is an Emeritus Board Member.   Given her professional and personal ties with the Nordstrom family, Campbell is unable to impartially consider a demand.

115.    Additionally, Campbell cannot impartially consider a demand because she is directly interested.   ███████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████           █████████████████████████

███████████████████████████████████    Because JBW is a defendant and one of the

COMPLAINT- Page 28

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

related parties whose transactions with the Company are being challenged, Campbell cannot impartially consider litigation against JBW, because she has personally benefited from and continues to benefit from the relationship with JBW.

116.    Defendant Turner cannot impartially consider a demand.   Turner is conflicted because of his social ties with the Nordstrom family.  Turner is based in Seattle, and Turner and his wife are involved in numerous philanthropic organizations with Bruce Nordstrom's wife Jeannie Nordstrom, and his sister, Anne Gittinger.  ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████   ████████████████████████ ████████████████████████   Because JBW is a defendant whose related party transactions with the Company are being challenged, Turner cannot impartially consider litigation against JBW, because he has personally benefited from and continues to benefit from the relationship with JBW.

117.    Defendant Ebanks cannot impartially consider a demand.   Ebanks is the President of Essence magazine, which is one of the publications in which Nordstrom advertises. ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████   Because JBW is a defendant whose related party transactions with the Company are being challenged, Ebanks cannot impartially consider litigation against JBW, because she has personally benefited from and continues to benefit from the relationship with JBW.

118.    Apart from the above disabling conflicts of interest affecting specific Director Defendants, all the Director Defendants (to the extent not already alleged) are incapable of impartially considering a demand to commence this litigation because they themselves all face a

---

**COMPLAINT**- Page 29

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

substantial likelihood of liability arising from this litigation.  Since 2007, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, the Director Defendants have approved and disseminated proxy statements that misled shareholders that the Company had assessed the costs of providing the aviation-related services to the Nordstrom family, when in fact no such analysis had ever been performed.  The Director Defendants therefore cannot be expected to bring a litigation in which they themselves face a substantial likelihood of liability.

119.    For the reasons stated above, there is not a disinterested or independent majority of the Board capable of considering Plaintiff's demand.

**B.    The Board Failed to Act in Good Faith In Approving The Related Party Transactions And Was Not Adequately Informed**

120.    Demand is also independently excused because the Board failed to adequately inform themselves and consciously disregarded their fiduciary duties when evaluating and approving the related party transactions with the Nordstrom family, thereby failing to exercise any business judgment.   Because they failed to exercise business judgment, the Board's decisions with respect to the related party transactions are not subject to deference, and Plaintiff is not required to first make a demand on the Board.

121.    With respect to the transactions with the Nordstrom family, the Board and its Governance Committee were under a duty to inform themselves as to the real costs to the Company of providing the services to the Nordstrom family.  The duty arose because the Board repeatedly told shareholders in the proxy statements that they performed such a cost analysis, and that they purportedly knew the "estimated cost to the Company of providing [the] services" to the Nordstrom family.  Additionally, the duty arose because, between 2009 and 2013, the Governance Committee could approve a related party transaction only if the committee determined that the transaction would "result in a net benefit to the Company and [its] shareholders."   Furthermore, according to the 2014 Proxy, when evaluating related party transactions the Governance Committee is required to evaluate "all relevant factors."

---

**COMPLAINT**- Page 30

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

122.   In conscious disregard of these duties, the Board failed to perform any cost analysis; failed to inform themselves what proportion of the Flight Department's resources were being diverted to serve the needs of the Nordstrom family; failed to examine the risks that were being assumed by Nordstrom as a result of its decision to provide aviation services for hire, and whether those risks were appropriate for the Company; and failed to evaluate whether the transactions provided a net benefit to the Company.  Instead, year after year, the Board and its Governance Committee rubber-stamped the related party transactions with the Nordstrom family even though the family paid just a fraction of the true costs.

123.   Accordingly, the Board and its Governance Committee consciously disregarded their duties, failed to act in good faith and failed to inform themselves about the true costs of the Flight Department.  For these reasons, their decisions cannot be deemed a product of the valid exercise of business judgment and demand is excused as a matter of law.

**C.    The Governance Committee Exceeded Its Authority By Approving Related Party Transactions In Which The Committee's Members Had A Material Interest**

124.   Demand is independently excused because, in approving certain of the related party transactions, the Governance Committee exceeded its authority.  The decisions of the Board and the Governance Committee with respect to these transactions are therefore not subject to deference as an exercise of business judgment, and Plaintiff is not required to first make a demand on the Board.

125.   According to the Company's proxy statements during the period from 2007 to 2012, "[n]o member of the [Governance] Committee participates in any approval of a Related Party transaction in which the member has a material interest, other than to provide all pertinent information regarding the transaction to the Committee."  In violation of this prohibition, the Governance Committee approved the related party transactions with JBW, even though the members of the Governance Committee had a material interest in the transactions with JBW.

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

1     126. ████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████

8     127.    As a result of their material interest in the related party transactions with JBW,

9 the Governance Committee was not authorized to review and approve the related party

10 transactions with JBW in Fiscal Years 2011 and 2012, and their decisions are therefore not

11 subject to deference as an exercise of business judgment.

12     128.    Demand is therefore independently excused on this basis alone.

13     **D.**    **Because The Nordstrom Family Are Controlling Shareholders, All**
**The Related Party Transactions With The Nordstrom Family Are**
14         **Subject to Heightened Review For Entire Fairness**

15     129.    The Nordstrom family collectively own at least 27% of the Company, and

16 together are controlling shareholders of the Company.  Bruce A. Nordstrom beneficially owns

17 13.84% of the Company; his sister Anne. E. Gittinger owns 8.16%; and his sons Blake

18 Nordstrom, Erik Nordstrom and Peter Nordstrom collectively own another 4.82% of the

19 Company.  James F. Nordstrom, Jr., the second cousin of Blake, Erik and Peter Nordstrom, also

20 owns approximately 573,271 shares of the Company.

21     130.    Additionally, the Nordstrom family dominates Nordstrom's Board, with the

22 brothers Blake, Erik and Peter Nordstrom occupying three seats.  Moreover, the Nordstrom

23 family continues to run the Company.  In addition to their roles as directors, Blake Nordstrom is

24 the President of Nordstrom.  Peter Nordstrom is an Executive Vice President and the President

25 of Merchandising.  Erik Nordstrom is an Executive Vice President and the President of

26

**COMPLAINT**- Page 32

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

Nordstrom Direct.  James F. Nordstrom, Jr. is an Executive Vice President and the President of Stores.

131.    Because the Nordstrom family are controlling shareholders, the price and terms of their dealings with the Company, as well as the process by which the transactions were approved, are subject to heightened scrutiny, and the burden shifts to the Nordstrom family and the Board to demonstrate that both these aspects of the related party transactions were entirely fair to Nordstrom's shareholders.   Because the transactions therefore are not subject to deference under the business judgment rule, demand is excused for this independent reason alone.

## VIII.    CLAIMS FOR RELIEF

### COUNT I
**(Breach of Fiduciary Duty – Approval Of Related Party Transactions)**
**(Asserted Derivatively Against The Director Defendants**
**And Governance Committee Defendants)**

132.    Plaintiff realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

133.    The Director Defendants and Governance Committee Defendants, as directors of Nordstrom, are fiduciaries of the Company and its stockholders.   As such, they owe the Company the highest duties of good faith, fair dealing, due care, and loyalty.  The Company's Director Code of Conduct also sets forth the specific duties of Nordstrom's directors.   As members of the Governance Committee, the Governance Committee Defendants had additional duties when approving related party transactions, as set forth in the Governance Committee's Charter and in the Company's proxy statements.

134.    When approving the related party transactions with the Nordstrom family, the Director Defendants and Governance Committee Defendants breached their duty of loyalty by failing to act in the face of a known duty to act and by consciously disregarding their duties. The Director Defendants and Governance Committee Defendants were under a duty to review

---

**COMPLAINT**- Page 33

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

the related party transactions carefully – in particular, to determine whether the costs to the Company of providing the aviation-related services to the Nordstrom family were covered by the payments from the Nordstrom family, and whether the risks being assumed by Nordstrom in operating an aviation services for-hire business were being adequately compensated by the payments from the Nordstrom family.

135.    The duty arose because, by representing to shareholders in every proxy statement since 2007 that the "payments [from the Nordstrom family] exceeded the estimated cost to the Company of providing those services," the Board implicitly represented to shareholders that they were in fact performing reviews of the costs to the Company.  Also, the duty arose because, as set forth in Nordstrom's proxy statements for the period 2009 to 2013, the Governance Committee was authorized to approve a related party transaction only if the committee determined "that the transaction [would] result in a ***net benefit*** to the Company and our shareholders." (emphasis added).

136.    By failing to conduct any cost analysis in any year, the Director Defendants and Governance Committee Defendants intentionally and consciously disregarded their fiduciary duty and failed to act in good faith.

137.    For the same reasons, when approving the related party transactions, the Director Defendants breached their fiduciary duty by violating the Director Code of Conduct, which requires Nordstrom's directors to "protect[ ] Nordstrom's assets and ensure[ ] that Nordstrom's assets are used only for legitimate business purposes," and to "observe the highest ethical standards and act with fairness, integrity and honesty to promote an environment that encourages Nordstrom's officers and employees to sustain and enhance Nordstrom's reputation."

138.    Finally, in approving the related party transactions, the Director Defendants and Governance Committee Defendants breached their duty of loyalty by elevating and favoring the interests of the Nordstrom family over the interests of Nordstrom and its public stockholders.

**COMPLAINT**- Page 34

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

139.    As a result of the above misconduct, the Company has sustained, and will continue to sustain, substantial harm.

**<u>COUNT II</u>**
**(Breach of Fiduciary Duty – Issuing Misleading Proxy Statements**
**In Violation Of Section 14(a) of the Exchange Act and Rule 14a-9)**
**(Asserted Derivatively Against All Director Defendants)**

140.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

141.    The Director Defendants, as directors of Nordstrom, are fiduciaries of the Company and its stockholders.  As such, they owe the Company the highest duties of good faith, fair dealing, due care, and loyalty.

142.    The Director Defendants caused Nordstrom to issue proxy statements for the fiscal years beginning February 4, 2007, February 3, 2008, February 1, 2009, January 31, 2010, January 30, 2011, January 29, 2012 and February 3, 2013 to solicit shareholder votes for the election of directors and the approval of executive compensation.  The Director Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the U.S. mail, interstate telephone communications, or the facilities of a national securities exchange in connection with soliciting shareholder votes as requested in the proxy statements.

143.    The proxy statements contained materially false and misleading disclosures. Among other misstatements, the proxy statements stated every year that, with respect to the aviation-related services provided to the Nordstrom family and the payments received in return from the Nordstrom family: "In each case, these payments exceeded the estimated cost to the Company of providing those services."  The Director Defendants thus implicitly represented that they had conducted a cost analysis.  In fact, the Board and its Governance Committee never performed any analysis of the costs to Nordstrom of providing the aviation-related services to the Nordstrom family.

---

**COMPLAINT**- Page 35

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

144. The proxy statements also misled shareholders because they failed to disclose: the extent by which Nordstrom had expanded its Flight Department specifically for purposes of catering to the needs of the Nordstrom family; the amount of services provided by Nordstrom's Flight Department to the Nordstrom family, and the proportion of the Flight Department's resources consumed by the Nordstrom family; and the true costs to Nordstrom of providing all of these services, including the increased risks of liability to which Nordstrom and its shareholders were exposed.

145. The inaccuracies and omissions in each proxy statement were material to the Company and its shareholders who were requested to vote on Board recommendations to re-elect directors.

146. The Director Defendants' failure to include these material facts in the proxy statements rendered them materially false and misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

147. The materially false and misleading proxy statements were essential for the continuation of Defendants' misconduct.  Disclosure of the truth would have ended shareholder support for the senior executives and Board members.

148. Accordingly, as a direct and proximate result of the materially false and misleading proxy statements, Nordstrom has suffered and continues to suffer direct and significant harm, including hidden subsidies transferred to the members of the Nordstrom family amounting to millions of dollars.

## COUNT III
### (Corporate Waste)
### (Asserted Derivatively Against The Director Defendants And Governance Committee Defendants)

149. Plaintiff realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

---

**COMPLAINT**- Page 36

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

150.   In approving the related party transactions with the Nordstrom family, the Director Defendants and Governance Committee Defendants committed corporate waste because the provision of the aviation-related services was one-sided and conferred disproportionately little benefit on the Company.

151.   In particular, the Company did not gain any benefit from assuming virtually full responsibility for operating, servicing and maintaining the Nordstrom family's vast personal fleet of aircraft.  As alleged above, the decision to provide these services was made as a favor to the Nordstrom family at the height of the financial crisis.

152.   Moreover, the costs to the Company of providing the aviation-related services to the Nordstrom family vastly exceeded the payments received from the Nordstrom family.  The payments to the Company also did not take into account the many risks of liability that Nordstrom assumed by effectively entering into the business of providing aviation-related services on a for-hire basis to third parties.  As a result, by agreeing to undertake the responsibility for operating, maintaining and flying the Nordstrom family's planes, the Director Defendants and Governance Committee Defendants irrationally squandered the Company's assets.

153.   As a result of the corporate waste alleged above, the Company has sustained, and will continue to sustain, substantial harm.

## COUNT IV
### (Aiding And Abetting Breach Of Fiduciary Duty)
### (Asserted Derivatively Against The Related Party Defendants)

154.   Plaintiff realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

155.   The Related Party Defendants were aware of the Director Defendants' fiduciary duties to Nordstrom and its stockholders.

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

156.    Despite their knowledge, the Related Party Defendants aided and abetted the Director Defendants' breaches of their fiduciary duties.

157.    The Related Party Defendants knowingly participated in the breaches by causing and accepting the aviation-related services from the Company, even though these transactions disproportionately favored the Related Party Defendants at the expense of Nordstrom and its shareholders.  The Related Party Defendants knew that they consumed a large proportion of the resources of the Flight Department, including at least ███ of the pilot resources of the Flight Department, and up to ███ of the time of the ground maintenance staff.  Nevertheless, the Related Party Defendants continued to pay just a fraction of the costs of the Flight Department.

158.    As a result of the Related Party Defendants' misconduct, the Company has suffered and continues to suffer harm.

## COUNT V
### (Unjust Enrichment)
### (Asserted Derivatively Against The Related Party Defendants)

159.    Plaintiff realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

160.    The Related Party Defendants received aviation-related services from the Company whose cost vastly exceeded the payments made by the Related Party Defendants, and which services subjected the Company to increased risk of liability.  In addition, the costs of these services and the payments made by the Related Party Defendants were misleadingly described in the Company's proxy statements.  Furthermore, to the extent the Related Party Defendants were employees of the Company, the Related Party Defendants breached the Employee Code of Conduct.

161.    Despite knowing these matters, the Related Party Defendants voluntarily accepted and retained the benefits from the Company.

**COMPLAINT**- Page 38

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

162.    As a direct and proximate result of the acts alleged herein, the Related Party Defendants wrongfully deprived the Company of substantial wealth and unjustly enriched themselves, and the Company has sustained, and continues to sustain, substantial harm.

163.    The Related Party Defendants are liable to the Company for damages as a result of the acts alleged herein, and should be required to disgorge their unjust gains and return them to the Company.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A.    An order declaring that the Director Defendants (including the Governance Committee Defendants) breached their fiduciary duties to the Company;

B.    An injunction requiring the Director Defendants (including the Governance Committee Defendants) to conduct a review and analysis of the costs of providing aviation-related services to related parties including the Nordstrom family, and to disclose in the Company's proxy statements whether these costs exceed the payments received from the Nordstrom family;

C.    An order declaring that the Related Party Defendants aided and abetted the Director Defendants' breaches;

D.    An order awarding damages, together with pre- and post-judgment interest to the Company;

E.    An Order requiring Nordstrom to pay Plaintiff's costs, including reasonable attorneys' fees, incurred in the prosecution of this action; and

F.    Such other and further relief as this Court deems just and proper.

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
(206) 448-1777

HUNG G. TA, ESQ. PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
(646) 453-7288

MORGAN & MORGAN P.C.
28 West 44th Street
New York, New York 10036
(212) 564-1637

1    Dated: March 12, 2015

2

3                                        STRITMATTER    KESSLER    WHELAN

4                                        s/ Brad J. Moore                          .

5                                        BRAD J. MOORE, WSBA #21802
                                         200 Second Avenue West
6                                        Seattle, WA  98119
                                         Tel:  (206) 448-1777
7                                        Fax:  (206) 728-2131

8

9                                        HUNG G. TA, ESQ. PLLC
                                         Hung G. Ta, Esq., *pro hac vice* pending
10                                       JooYun Kim, Esq., *pro hac vice* pending
                                         Natalia D. Williams, Esq., *pro hac vice*
11                                       pending
                                         250 Park Avenue, 7th Floor
12                                       New York, New York 10177
                                         Tel:     (646) 453-7290
13                                       Fax:     (646) 453-7289

14

15                                       MORGAN & MORGAN P.C.
                                         Peter Safirstein, Esq., *pro hac vice* pending
16                                       Roger Sachar, Esq., *pro hac vice* pending
                                         28 West 44th Street
17                                       New York, New York 10036
                                         Tel:     (212) 564-1637
18                                       Fax:     (212) 564-1807

19

20                                       KYROS LAW OFFICES
                                         Konstantine W. Kyros, Esq., *pro hac vice*
21                                         pending
                                         17 Miles Road
22                                       Hingham, MA 02043

23                                       *Attorneys for Plaintiff*

24

25

26

**COMPLAINT**- Page 40

### VERIFICATION OF JUDITH BURBRINK
### IN SUPPORT OF VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

STATE OF WASHINGTON              )
                                 ) ss.
KING COUNTY                      )

I, JUDITH BURBRINK, being duly sworn, state as follows:

1.      I have read the foregoing Verified Shareholder Derivative Complaint ("Complaint") and consulted with counsel.

2.      I have continuously held Nordstrom common stock during all relevant times alleged in the Complaint.

3.      The factual statements contained in the Complaint are true to the best of my knowledge, information and belief.

4.      I make this Verification subject to the penalty of perjury under the laws of the State of Washington.


_____
JUDITH BURBRINK


Sworn to and subscribed before me on:

March _10_ , 2015


_____
NOTARY PUBLIC
STATE OF WASHINGTON